AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Oregon

FILED 19 MAR '18 10:53 USDC-ORP

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

Four (4) pieces of SUBJECT MAIL, held in the custody of
IRS at 1220 SW Third Ave., Portland, Oregon,
further described in Attachment A

Case No. '18-MC-213

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Four (4) pieces of SUBJECT MAIL, held in the custody of IRS at 1220 SW Third Ave., Portland, Oregon, and further described in Attachment A

located in the _____ District of _____ Oregon _____, there is now concealed *(identify the person or describe the property to be seized):*
The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1956, and (h) | Money Laundering Conspiracy |
| 21 U.S.C. §§ 841(a)(1), 846 | Proceeds of Drug Trafficking |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SCOTT MCGEACHY, Special Agent, IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 03/19/2018

_____
*Judge's signature*

City and state: Portland, Oregon

JOHN V. ACOSTA, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to be Searched and Seized

**"Subject Mail"** held in custody with the Internal Revenue Service Criminal Investigation at 1220 SW Third Avenue, Portland, OR 97204, more particularly described as:

(a)    One Piece of Mail from "US Bank AML" – "To The Order of Cash or Collateral Entertainment LLC, PO Box 1486, Beaverton, OR 97075"

(b)    One Piece of Mail from "US Bank AML" – "To The Order of Johnell Cleveland, PO Box 1486, Beaverton, OR 97075"

(c)    One Piece of Mail from "US Bank, PO Box 1800, Saint Paul, MN 55101" – "Johnell Cleveland, PO Box 1486, Beaverton, OR 97075"

(d)    One Piece of Mail from "Western Union Financial Services, Inc., PO Box 8525, Coral Springs, FL 33075" – "Johnell Cleveland PO Box 1486, Beaverton, OR 97075"

## ATTACHMENT B

## ITEMS SUBJECT TO SEARCH AND SEIZURE

The items that are the subject of the search and seizure applied for in this affidavit are pieces of mail related to drug trafficking, drug proceeds, and money laundering by Johnell CLEVELAND, Cash or Collateral Entertainment, LLC, and The Dirty TaeToe, LLC, that are found in the location set forth in Attachment A, and contain evidence, fruits, and instrumentalities of violations of federal offenses related to drug trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846, money laundering in violation of 18 U.S.C. § 1956, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The items described in Attachment A will be seized, searched for, and examined for the following:

a.      Financial records including bank statements, investment account records, cashier's checks, canceled checks, deposit records, check stubs, payment ledgers, checkbook registers, documentation of assets and liabilities, general ledgers, general journals, cash, cash receipts, cash disbursement journals, accounts receivable journals, accounts payable journals, contracts, billing information, stock account statements, bond records, certificates of deposit records, signature cards, wire transfers, money orders, loan documents, loan applications, loan payment records, official checks, and records of bills relating to the receipt of currency or other forms of payment.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | | |
|---|---|---|
| STATE OF OREGON | ) | |
| | ) ss. | **SUPPLEMENTAL AFFIDAVIT OF** |
| COUNTY OF MULTNOMAH | ) | **SPECIAL AGENT SCOTT MCGEACHY** |

I, Scott McGeachy, being first duly sworn, depose and say:

### BACKGROUND OF AFFIANT

1. I am a Special Agent employed by the Internal Revenue Service (IRS), Criminal Investigation, and have held this position for sixteen years. I have successfully completed the 11-week Criminal Investigator Training Course at the Federal Law Enforcement Training Center and the 16-week Special Agent Basic Training course put on by the Internal Revenue Service. During this time I have either conducted or been involved in investigations concerning Title 26 (Income Tax), Title 18 (Conspiracy and Money Laundering), and Title 31 (Bank Secrecy Act) violations by individuals involved in both legal and illegal occupations.

2. I have written and/or directly been involved in writing over 165 search and/or seizure warrants and have participated in the execution of numerous federal search warrants involving criminal income tax charges, money laundering, narcotics violations, and other criminal activities during which evidence of criminal violations was seized. For the past ten years, I have predominantly worked investigations involving narcotics trafficking and money laundering.

### PURPOSE OF APPLICATION

3. Based on information contained in this affidavit, I submit that four (4) pieces of mail sent to the Post Office Box (P.O. Box) held in the name of Johnell CLEVELAND (hereinafter, "**Subject Mail**") and more particularly described as follows:

Page | 1 – Supplemental Affidavit of Special Agent Scott McGeachy

- One Piece of Mail from "US Bank AML" – "To The Order of Cash or Collateral Entertainment LLC, PO Box 1486, Beaverton, OR 97075";

- One Piece of Mail from "US Bank AML" – "To The Order of Johnell Cleveland, PO Box 1486, Beaverton, OR 97075";

- One Piece of Mail from "US Bank, PO Box 1800, Saint Paul, MN 55101" – "Johnell Cleveland, PO Box 1486, Beaverton, OR 97075"; and

- One Piece of Mail from "Western Union Financial Services, Inc., PO Box 8525, Coral Springs, FL 33075" – "Johnell Cleveland PO Box 1486, Beaverton, OR 97075";

are both forfeitable property and evidence, fruits, and instrumentalities of drug trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846; money laundering in violation of 18 U.S.C. § 1956; and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The **Subject Mail** is currently in law enforcement custody at the Internal Revenue Service Criminal Investigation at 1220 SW Third Avenue, Portland, OR 97204. The **Subject Mail** is further described in Attachment A. I seek authority to search the **Subject Mail** for those items set forth in Attachment B as evidence, fruits, and instrumentalities and to seize those items as forfeitable property.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, search warrant information, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## INVESTIGATIVE OVERVIEW

**Executed Search Warrants**

5. On March 7, 2018, federal search warrants were executed at (1) the residence of Johnell CLEVELAND and Minyana Bishop located in Happy Valley, Oregon, (2) a storage unit located 15434 SE 142nd Avenue, Unit C021, Clackamas, OR 97015, leased by Minyana Bishop and Johnell CLEVELAND and (3) an apartment in Vancouver, Washington that CLEVELAND was utilizing as a stash house.

6. During the execution of the search warrant at CLEVELAND's residence, law enforcement arrested CLEVELAND in connection with an attempted murder charge related to a December 23, 2017 shooting in downtown Portland, OR, that left one individual critically injured. Also during the search of CLEVELAND's residence, law enforcement seized a 2012 Mercedes Benz (with bullet holes through the vehicle), believed to have been driven by CLEVELAND during the December 23, 2017 shooting, $27,372 in cash, seven (7) firearms (one firearm confirmed stolen out of Vancouver, WA), a ballistic vest, and approximately 312 suspected oxycodone pills wrapped in two plastic baggies.

7. On March 7, 2018, during the execution of the search warrant at the storage unit located at 15434 SE 142nd Avenue, Unit C021, Clackamas, OR 97015, law enforcement officials seized $125,040 in cash.

8. On March 7, 2018, during the search of the apartment of Tinisha White in Vancouver, WA, law enforcement officials seized approximately 691 suspected oxycodone pills in plastic bags (consistent with the packaging of the suspected oxycodone pills seized from CLEVELAND's residence), approximately 4.8 grams of a white powdery substance, approximately .7 grams of

suspected heroin and two additional firearms.  Law enforcement conducted a consent search of White's BMW and seized an additional 318 suspected oxycodone pills.

9.  On March 8, 2018, law enforcement executed a federal search warrant on a safe deposit box at Bank of America in Portland, OR, held in the name of Johnell CLEVELAND, and seized an additional $28,000 in cash.

**Seizure Warrants**

10. On March 6, 2018, The Honorable Paul Papak, U.S. Magistrate Judge in the District of Oregon authorized the seizure of four (4) U.S. Bank accounts and a 2012 Dodge Durango.  The affidavit supporting the seizure warrants is attached hereto and incorporated herein.

11. On March 7, 2018, law enforcement executed the seizure warrants on four U.S. Bank accounts held in the name of Johnell CLEVELAND, Minyana Bishop, The Dirty TaeToe, LLC, and Cash or Collateral Entertainment, LLC.  U.S. Bank personnel informed law enforcement that U.S. Bank closed the bank account held in the name of Johnell CLEVELAND on or around March 6, 2018, and that U.S. Bank mailed a cashier's check containing the closing balance of the bank account to P.O. Box 1486, Beaverton, OR 97075.  U.S. Bank personnel informed law enforcement that U.S. Bank also closed the other three bank accounts at the same time, but did not specify what happened to any closing balance of those accounts.

12. On March 8, 2018, I contacted U.S. Postal Inspector Adam Sale regarding P.O. Box 1486, Beaverton, OR 97075.  Postal Inspector Sale provided me the P.O. Box application, which showed Alysia Dawn Hoffman as the applicant and listed Johnell CLEVELAND as an authorized user of P.O. Box 1486.  Inspector Sale contacted the post office and had mail pulled from circulation that was both addressed to CLEVELAND or his associated companies and appeared to be related to financial transactions.  He ultimately pulled four pieces of mail,

constituting **Subject Mail**, which are now are in law enforcement custody at the Internal

Revenue Service Criminal Investigation at 1220 SW Third Avenue, Portland, OR 97204.

13. I believe two of the pieces of mail from U.S. Bank AML are cashier's checks and contain

proceeds of CLEVELAND's money laundering and drug trafficking activity. One of the pieces

of mail from U.S. Bank AML is addressed "To The Order of Johnell Cleveland." I believe this

is a cashier's check for the closing balance of U.S. Bank account ending in 9166 held in the

name of Johnell CLEVELAND, which was the subject of a seizure warrant. The March 6, 2018

seizure warrant authorized seizure of funds up to the amount of $5,796. I am now seeking

seizure of the entire cashier's check as proceeds of drug trafficking based on the following

newly obtained evidence.

14. On March 7, 2018, Portland Police Officers Randy Castaneda and Christopher Devlin contacted

Pamela White at 8362 NE Sandy Blvd, #501, Portland, OR. Pamela White was identified as the

mother of Johnell CLEVELAND. Officers Devlin and Castaneda explained that CLEVELAND

had been arrested earlier that morning and they wished to ask her questions regarding a $20,000

check from Gallagher Basset Services payable to Pamela White, but deposited into Johnell

CLEVELAND's U.S. Bank account ending in 9166. White stated she received the $20,000

check from Sharp Sodexo Hospital, her former employer, as part of a settlement. White stated

she signed the check over to CLEVELAND to repay CLEVELAND for all the money he

provided her over the years. Officers Castaneda and Devlin asked for consent to search the

apartment, but White declined and they departed from the apartment complex.

15. Based on my review of CLEVELAND's bank accounts I did not identify any checks or

legitimate funds paid out by CLEVELAND for the benefit of White. Moreover, law

enforcement seized over $180,000 in cash from CLEVELAND and jewelry with a retail value

estimated to be in excess of $100,000. Therefore, I believe CLEVELAND supported White

with proceeds from his drug trafficking operation. Based on the interview with Pamela White,

the newly discovered cash hoard found in Johnell CLEVELAND's property, the fact that

Johnell CLEVELAND had limited sources of legitimate income, and the significant cash

deposits into CLEVELAND's account ending in 9166, I believe that all monies from that bank

account are proceeds of drug trafficking or traceable thereto.

16. The second piece of mail from U.S. Bank AML is addressed "To The Order of Cash or

Collateral Entertainment LLC." I believe this is a cashier's check for the closing balance of

U.S. Bank account ending in 1377 held in the name of Cash or Collateral Entertainment, LLC.

The March 6, 2018 seizure warrant authorized seizure of all funds in this bank account, which I

am also seeking here.

17. I believe the third piece of mail from U.S. Bank as well as the Western Union Financial

Services, Inc. mail, also contain evidence of CLEVELAND's drug trafficking and money

laundering activity. I know from my training and experience that individuals involved in drug

trafficking often purchase Western Union Money Orders to pay their outstanding bills when

they were unable to utilize their bulk cash. I know CLEVELAND was utilizing U.S. Bank to

launder drug money and I believe that Western Union mail might identify additional leads

regarding expenses CLEVELAND paid to promote his ongoing drug trafficking and money

laundering operation.

18. Therefore, based on the investigation, I believe the **Subject Mail** contains both forfeitable

property and evidence, fruits, and instrumentalities of drug trafficking in violation of 21 U.S.C.

§§ 841(a)(1) and 846; money laundering in violation of 18 U.S.C. § 1956; and conspiracy to

commit money laundering in violation of 18 U.S.C. § 1956(h) and is therefore subject to search

and seizure.  Furthermore, I submit that the cashier's checks are subject to seizure pursuant to 18

U.S.C. § 981(b) and 21 U.S.C. §§ 853(f) and 881(b), and subject to forfeiture pursuant to 18

U.S.C. §§ 981(a)(1)(A), 982(a)(1), and 21 U.S.C. §§ 853(a)(1) and 881(a)(6).

19. I also submit that an order under 21 U.S.C. § 853(e) may not be sufficient to assure the

availability of the cashier's checks for forfeiture because the cashier's checks could be cashed

and the currency secreted away easily, as Johnell CLEVELAND has done in the past.

20. This affidavit has been reviewed by Assistant United States Attorney Julia E. Jarrett, who has

advised me that, in her opinion, there is probable cause to seize the assets identified above.

### REQUEST TO SEAL

To avoid any premature disclosure of the existence of the above-described investigation to

anyone who may generally view the public files of the clerk's office, with the result and risk that the

investigation may be compromised, I request that the affidavit and order authorizing the searches,

be sealed until further order of this Court.

_____

SCOTT MCGEACHY
Special Agent
Internal Revenue Service

SUBSCRIBED and SWORN to before me this 19th day of March 2018.

_____

JOHN V. ACOSTA
United States Magistrate Judge

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | | |
|---|---|---|
| STATE OF OREGON | ) | |
| | ) | ss. AFFIDAVIT OF SCOTT MCGEACHY |
| COUNTY OF MULTNOMAH | ) | |

I, Scott McGeachy, being first duly sworn, depose and say:

### BACKGROUND OF AFFIANT

1. I am a Special Agent employed by the Internal Revenue Service (IRS), Criminal Investigation, and have held this position for sixteen years. I have successfully completed the 11-week Criminal Investigator Training Course at the Federal Law Enforcement Training Center and the 16-week Special Agent Basic Training course put on by the Internal Revenue Service. During this time I have either conducted or been involved in investigations concerning Title 26 (Income Tax), Title 18 (Conspiracy and Money Laundering), and Title 31 (Bank Secrecy Act) violations by individuals involved in both legal and illegal occupations.

2. I have written and/or directly been involved in writing over 150 search and/or seizure warrants and have participated in the execution of numerous federal search warrants involving criminal income tax charges, money laundering, narcotics violations, and other criminal activities during which evidence of criminal violations was seized. For the past ten years, I have predominantly worked investigations involving narcotics trafficking and money laundering.

### PURPOSE OF APPLICATION

3. Based on information contained in this affidavit, I submit that the following property is —forfeitable:

Page | 1 – Affidavit of Special
Agent Scott McGeachy

- A 2012 Dodge Durango, its tools and appurtenances, OR/904HGL, VIN: 1C4SDHCT7CC362041 (hereinafter, "**2012 Dodge Durango**")

- All money contained in U.S. Bank Account ending in 1377, held in the name of Cash or Collateral Entertainment, LLC

- Up to $14,569 contained in U.S. Bank Account ending in 0475, held in the name of Johnell L. Cleveland DBA Dirty TaeToe, LLC

- Up to $31,020 contained in U.S. Bank Account ending in 8619, held in the name of Minyana Bishop

- Up to $5,796 contained in U.S. Bank Account ending in 9166, held in the name of Johnell Cleveland (hereinafter, "**SUBJECT BANK ACCOUNTS**")

4. I submit that the entire contents of **U.S. Bank Account for Cash or Collateral Entertainment, LLC ending in 1377** and up to $14,569 contained in **U.S. Bank Account for Johnell L. Cleveland DBA Dirty TaeToe, LLC ending in 0475** was involved in or traceable to property involved in money laundering offenses in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h), and contain property constituting, or derived from, any proceeds obtained, directly or indirectly from a violation; constituting property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation; and constituting property furnished or intended to be furnished in exchange for controlled substances or proceeds traceable thereto in violation of 21 U.S.C. § 841(a)(1). As the money currently in **U.S. Bank Account for Johnell L. Cleveland DBA Dirty TaeToe, LLC ending in 0475** is not directly traceable, I am seeking to rely on 18 U.S.C. § 984 to seize the total of the cash deposits that were deposited into the bank account in the preceding year starting on May 2, 2017, to the present, which total $14,569.

5. I submit that up to $31,020 contained in **U.S. Bank Account for Minyana Bishop ending in 8619** is forfeitable as property constituting, or derived from, any proceeds obtained, directly or indirectly from a violation; constituting property used, or intended to be used, in any manner or

part, to commit, or to facilitate the commission of a violation; and constituting property furnished or intended to be furnished in exchange for controlled substances or proceeds traceable thereto in violation of 21 U.S.C. § 841(a)(1). As the money currently in the account is not directly traceable, I am seeking to rely on 18 U.S.C. § 984 to seize the total of the cash deposits made in the preceding year starting on March 6, 2017, to the present that were deposited into bank account, which total $31,020.

6.  I submit that up to $5,796 contained in **U.S. Bank Account for Johnell Cleveland ending in 9166 and a 2012 Dodge Durango, its tools and appurtenances, OR/904HGL, VIN: 1C4SDHCT7CC362041** are forfeitable as property constituting, or derived from, any proceeds obtained, directly or indirectly from a violation; constituting property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation; and constituting property furnished or intended to be furnished in exchange for controlled substances or proceeds traceable thereto in violation of 21 U.S.C. § 841(a)(1).

7.  **SUBJECT BANK ACCOUNTS** and the **2012 Dodge Durango** are therefore subject to seizure pursuant to 18 U.S.C. §§ 981(b), 982(b), 21 U.S.C. §§ 853(f), and 881(b), and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (C), 982(a)(1), 984, 21 U.S.C. §§ 853(a)(1) & (2), 881(a)(6), and 28 U.S.C. § 2461(c). Accordingly, this application seeks seizure warrants for the **SUBJECT BANK ACCOUNTS** and the **2012 Dodge Durango**.

8.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, search warrant information, communications with others

Page | 3 – Affidavit of Special
Agent Scott McGeachy

who have knowledge of the events and circumstances described herein, and information gained
through my training and experience.

## INVESTIGATIVE OVERVIEW

9.  The investigation started August 3, 2016, at the airport in Portland, Oregon, following an
    interdiction of Acacia Dietz and the seizure of $10,000 in cash located in her backpack.  Dietz
    stated she was flying to Los Angeles, CA, with Johnell CLEVELAND and Kyrell Bishop.  Dietz
    stated CLEVELAND provided her with the $10,000 in cash to place in her backpack.  Dietz told
    law enforcement that the previous week, she had also flown from Portland, OR, to Los Angeles,
    CA, with CLEVELAND and Bishop.  Upon arrival in Los Angeles, CA, they rented a car from
    Enterprise and then went to eat at TGIF's and drove the rental car straight back to Portland, OR.
    Dietz believed they were trafficking drugs, but she did not personally see the drugs in the
    vehicle.

10. On December 23, 2017, at approximately 2:19 a.m., one male was shot and critically injured in a
    parking lot of approximately the 300 block of Southwest 3rd Avenue, Portland, OR.
    Investigators would later learn that CLEVELAND was the driver of a white, four-door
    Mercedes Benz sedan, and video surveillance shows the driver of that Mercedes shot and
    critically injured the male subject.

11. Surveillance has identified that CLEVELAND almost exclusively drives a rental car as his
    primary vehicle.  In fact, when CLEVELAND turns in his rental car, he immediately exchanges
    it for a new rental car.  Surveillance has identified that almost on a daily basis that
    CLEVELAND departs his residence and travels to an apartment in Vancouver, WA, where
    CLEVELAND stays for brief periods of time prior to departure.  In my training and experience,

the exclusive use of a rental car and daily trips to an apartment are consistent with an individual

utilizing a stash house to secure drugs, guns, and money.

12. Investigators initiated a financial investigation of Johnell CLEVELAND, which revealed

thousands of dollars in cash deposits into bank accounts held in the names of Johnell

CLEVELAND, Minyana Bishop, Cash or Collateral Entertainment, LLC, and The Dirty

TaeToe, LLC. Deposits into these bank accounts were often made in round, large whole dollar

amounts. An analysis of these deposits found that the majority of all deposits into these

accounts, aside from The Dirty TaeToe account, originate from cash. The Dirty TaeToe, LLC,

receives deposits from Square, Inc., a point of sale machine as well as small-dollar cash deposits

that are both consistent with a food cart business and has expenses consistent with the operation

of a food cart business. But this account also received $25,719 in large-dollar cash deposits and

incurs substantial expenses for travel and rental cars, which are not consistent with the operation

of a food cart business, but are consistent with laundering illegal money through a legitimate

business to conceal and disguise the true source of the funds. A review of the withdrawals for

the business Cash or Collateral Entertainment, LLC, found that there are almost no expenses in

support of legitimate business activity; only travel, hotel, and rental car expenses.

## IDENTITY OF CONSPIRATORS AND ROLES

13. Johnell CLEVELAND is known by the alias of "MB", "MP", "Money Bags" and "Mak

Billion." A search of Oregon Secretary of State Records revealed that CLEVELAND is the

listed owner or associated with three Portland, Oregon-based businesses. CLEVELAND is the

listed owner of Cash or Collateral Entertainment, LLC, registered as an entertainment business.

YouTube rap music videos of CLEVELAND singing to songs such as "Crackhouse," "Chase a

Bag!" and "Bankroll" all list "Cash or Collateral Ent" below the name of the song to show that

Cash or Collateral Entertainment, LLC produced CLEVELAND's YouTube videos.
Furthermore, just prior to the start of the YouTube rap music video "CC Entertainment" is listed
on the screen also consistent with the placement of the name of a music production company.
CLEVELAND is also the listed owner of The Dirty TaeToe, LLC, which is a food cart located
at 4233 N. Mississippi Avenue, Portland, Oregon, off of Mississippi and Skidmore Street.
Finally, CLEVELAND is listed as a member of Precious's Learning Center, LLC, with Minyana
Bishop; however, we have been unable to identify a business location or business operation for
Precious's Learning Center.  CLEVELAND has a prior felony conviction in 2007 for
distribution of a controlled substance.

14. Minyana BISHOP is CLEVELAND's girlfriend, co-owner with CLEVELAND of Precious's
Learning Center LLC, and resides with CLEVELAND at 12762 SE 157th Avenue, Happy
Valley, OR 97068 ("**CLEVELAND RESIDENCE**").  BISHOP's personal U.S. Bank Account
ending in 8619 has received cash deposits oftentimes in round, whole dollar amounts.  An
analysis of BISHOP's bank account compared to her 2016 Form 1040 U.S. Individual Income
Tax Return revealed that cash deposits substantially exceeded her reported income.  Based on
surveillance and tax records, it appears that Bishop and CLEVELAND have a child together.

## STATEMENT OF PROBABLE CAUSE

**Cash Seizure from Portland International Airport (PDX)**

15. On August 3, 2016, members of Portland Police Bureau HIDTA Interdiction Team (HIT)
responded to the Portland International Airport (PDX) to assist Port of Portland detectives with
an investigation.  At PDX, HIT investigators met with Port of Portland Detectives following
TSA security screeners' discovery of $10,000 in U.S. currency in the belongings of Acacia
Dietz.

16. A Portland Police Officer advised Dietz of her *Miranda* rights and told Dietz she was not under arrest. Dietz indicated she understood her rights and agreed to speak with investigators.

17. Dietz stated she was flying with two friends, "Kyrell," later identified as Kyrell Bishop, and "MB," later identified as Johnell CLEVELAND, from Portland to Los Angeles, CA. On August 3, 2016, Bishop and CLEVELAND picked up Dietz and drove with her to PDX where they parked in the economy parking lot. Dietz stated CLEVELAND provided her with two bundles of cash and told her to place the cash in her backpack. Dietz believed CLEVELAND also possessed cash in his backpack, but she did not see that cash.

18. Dietz said that she, Bishop, and CLEVELAND were in line at the TSA security checkpoint when TSA conducted a search of her backpack and located the two bundles of cash totaling $10,000. Dietz stated that CLEVELAND approached her and told her to say the cash was hers. Dietz told TSA the cash belonged to her but began to get nervous. While Dietz was speaking with TSA, she noticed CLEVELAND and Bishop had departed.

19. I reviewed Southwest Airline records and confirmed that on August 3, 2016, CLEVELAND, Bishop and Dietz were scheduled to fly from PDX to Los Angeles International Airport (LAX) prior to the interdiction of Dietz. Southwest Airline records show that CLEVELAND purchased all three tickets and was charged $236.94 from the U.S. Bank account ending in 1377 in the name of Cash or Collateral Entertainment.

20. On August 4, 2016, Johnell CLEVELAND's debit card ending in 1611 had three charges against the U.S. Bank account ending in 1377, the account held in the name of Cash or Collateral Entertainment, LLC. CLEVELAND is the authorized signor on the bank account. The three debit card charges were to Southwest Airlines, each for $78.98 (totaling $236.94), consistent with the purchase of three one-way airplane tickets.

21. On August 5, 2016, a debit card charge was made against the U.S. Bank Account held in the name of Johnell CLEVELAND dba Dirty TaeToe, LLC, for $6.78 at an ExxonMobil in Firebaugh, California (Fresno County, CA) and a second debit card charge against the U.S. Bank Account held in the name of Cash or Collateral Entertainment at Lake Street Station in Mount Shasta, CA for $1.93.  I know from my training and experience that the location of these charges is consistent with travel of an individual having flown to Los Angeles, CA, to pick up narcotics and immediately turning around to drive back to Portland, OR.

22. Dietz stated she travelled previously with Bishop and CLEVELAND to Los Angeles on July 25, 2016.  Dietz flew with Bishop and CLEVELAND, CLEVELAND rented a car at Enterprise, they checked into a nearby hotel, and they went to TGIF to eat.  Dietz stated, on that day, she and Bishop drove the rental car to Portland, OR, while CLEVELAND stayed in California. Dietz believed the rental car contained drugs but was unable to locate any drugs.  Dietz stated that she believed Bishop and CLEVELAND were dealing drugs.

23. I reviewed Southwest Airlines records and confirmed that on July 25, 2016, CLEVELAND, Bishop, and Dietz flew from PDX to LAX.  Southwest Airlines did not indicate any checked luggage for CLEVELAND, Bishop, or Dietz.

24. National Car Rental records show that on July 25, 2016, Johnell CLEVELAND rented a Nissan 4-door at 9:48 a.m. from Los Angeles, CA, and the rental car was returned to National Car rental in Portland, OR, on July 26, 2016, at 10:56 a.m., with total miles driven of 1,017.  This rental record is consistent with Dietz's statement to law enforcement.  CLEVELAND rented a second vehicle from National Car rental in Los Angeles, CA, also on July 25, 2016, a 2016 Nissan 4-door at 12:48 p.m., which was also returned to Portland, OR, on July 26, 2016 at 2:26 p.m., with

total miles driven of 1,010.  I know it is common for individuals involved in trafficking

narcotics to use couriers to insulate themselves from personally transporting narcotics.

25. I have reviewed National Rent a Car and Enterprise Rent a Car records and determined

CLEVELAND has rented vehicles both locally in Portland, OR, as well as during his travels to

Los Angeles, CA, and Las Vegas, NV.  I know from my training and experience that it is

common for individuals that are engaged in illegal activity to utilize rental cars in case law

enforcement runs the license plate to identify the registered owner of a vehicle.  The following is

a summary based on a partial return of rental car records related to CLEVELAND:

- August 17, 2016, from Los Angeles, CA, returned to Portland, OR, on August 19, 2016, with total miles driven of 1,127
- August 25, 2016, from Los Angeles, CA, returned to Los Angeles, CA, on August 28, 2016, with total miles driven of 464
- December 7, 2016, from Los Angeles, CA, returned to Los Angeles, CA, on December 8, 2016, with total miles driven of 450
- January 23, 2017, from Portland, OR, returned to Portland, OR, on March 6, 2017, with total miles driven of 744
- February 18, 2017, from Los Angeles, CA, returned to Las Vegas, NV, on February 21, 2017, with total miles of 555
- March 16, 2017, from Los Angeles, CA, returned to Los Angeles, CA, on March 18, 2017, with total miles driven of 164
- March 31, 2017, from Portland, OR, and returned to Portland, OR, on April 4, 2017, with total miles driven of 270
- April 2, 2017 from Las Vegas, NV returned to Las Vegas, NV on April 5, 2017, with total miles driven of 296
- April 24, 2017, from Portland, OR, and returned to Portland, OR, on May 26, 2017, with total miles driven of 1,108
- April 29, 2017, from Los Angeles, CA, returned to Las Vegas, NV, on May 6, 2017, with total miles driven of 734
- May 26, 2017, from Portland, OR, returned to Portland, OR, on June 26, 2017, with total miles driven of 625 (three cars utilized during this rental period)
- June 26, 2017, from Portland, OR, returned to Portland, OR, on July 18, 2017, with total miles driven of 762
- July 22, 2017, from Portland, OR, returned to Portland, OR, on July 25, 2017, with total miles driven of 173 miles
- July 26, 2017, from Portland, OR, returned to Portland, OR, on August 2, 2017, with total miles driven of 596

**December 23, 2017 Downtown Portland Shooting**

26. On December 5, 2017, Officer McCollister conducted surveillance at the **CLEVELAND RESIDENCE**, located at 12762 SE 157th Avenue, Happy Valley, OR 97068. A white, four-door Mercedes Benz OR/888HRV registered to Minyana BISHOP was parked in the driveway along with a white Mercedes Benz SUV with an Oregon Temp Permit.

27. On December 23, 2017, at approximately 2:19 a.m., Portland Police Bureau Central Precinct Officers responded to a shooting in a parking lot around the 300 block of Southwest 3rd Avenue, Portland, OR. One male was shot and critically injured. Officer McCollister informed me that investigators obtained video surveillance from the area of the December 23rd shooting. Officer McCollister reviewed the video surveillance, which showed a white Mercedes sedan driving into the parking lot as a pedestrian walked toward the driver door of the Mercedes. Video surveillance showed the pedestrian falling to the ground, and it appeared that driver of the Mercedes was discharging a firearm in his direction. Two unidentified pedestrians then moved toward the Mercedes and appeared to be firing shots back at the Mercedes.

28. Officer McCollister received information from Portland Police Gang Detectives, via a source wishing to remain anonymous, that one of the individuals involved in the shooting is known as "MP" on Facebook. Johnell CLEVELAND'S Facebook previously listed his name as "Joh'nell Mp Doe." In subsequent weeks following the shooting, his Facebook account name changed to "Frank Mathews." I know that Cleveland goes by the alias "MP" or "Mak Papi" as well as "MB" or "Mak Billion" as a rap music artist. The anonymous source further indicated that ~~Johnell Cleveland, as displayed in on the Facebook account "Joh'nell Mp Doe" was the person~~ they believed to be involved in the shooting.

29. On January 4, 2018, Detective Bryan Declercque interviewed a witness to the December 23, 2017 shooting, "B.H.". "B.H." stated she was in the parking lot of SW 3rd Avenue and SW Stark Street at the time of the shooting. "B.H." observed a white sedan enter the parking lot from 4th Avenue and come to a stop. "B.H." observed a black male in his 20's to 30's with a "rounder face" wearing a baseball cap. "B.H." told Detective Declercque it was dark and rainy out, but there were lights in the parking lot that offered some illumination. "B.H." observed a black male on foot approach the driver's side door of the white sedan. Shortly thereafter, "B.H." heard gunshots and saw the black male on foot fall to the ground as if shot.

30. Detective Declercque presented a photographic line-up to "B.H.". The line-up consisted of CLEVELAND and five photographs of males with similar physical characteristics. The five additional photographs were selected at random and were unrelated to the shooting investigation. "B.H." viewed all six photographs. "B.H." stated the photograph of CLEVELAND "may be the guy" driving the white car. "B.H." eventually selected the photograph of an unrelated male that looked similar to CLEVELAND.

31. On December 24, 2017, at approximately 9:00 a.m., an inmate at the Oregon State Penitentiary, Wallace Simpson, made a call to telephone number (503) 512-3762. The identity of the male user of (503) 512-3762, hereafter referred to as UM3762, is unknown at this time. Per penitentiary policy, the call was recorded.

32. In the call, UM3762 and Simpson greeted, saying "Happy Holidays." UM3762 asked Simpson if he saw the news and Simpson asked if UM3762 was referring to "that shit downtown" "by that hotel." I believe, based upon the remainder of the conversation, UM3762 is referring to the aforementioned shooting in the SW 300 block of SW 3rd Avenue, one day earlier. Simpson asked UM3762 who was involved, and UM3762 paused and said "Money Bags." I believe

"Money Bags" to be coded language referring to Johnell CLEVELAND. I know CLEVELAND to be rap artist who performs under the alias "Mak Billion." Simpson replied to UM3762 singing "time to check my crack house, crack house" which I know to be lyrics from the song "Crack House" performed by "Mak Billion."

33. Later in the conversation, UM3762 referred to the shooter as "MP." I know CLEVELAND to be commonly referred to by the alias "MP" or "Mak Papi." In another video filmed under the alias "Mak Billion," CLEVELAND performed a song titled "Mak Papi."

34. On January 3, 2018, Officer McCollister conducted surveillance at the CLEVELAND RESIDENCE. He observed a white Mercedes SUV with Oregon Temp Permit and an orange Dodge Durango bearing OR/904HGL parked in the driveway of the residence. Parked on the street directly in front of the residence was a Ford SUV bearing California plate 7ZLR131, a Hertz rental car. Officer McCollister did not observe the white, four-door Mercedes Benz, registered to BISHOP, parked in the driveway of the residence as he had prior to the shooting.

35. On January 13, 2018, I viewed video surveillance in the area of CLEVELAND RESIDENCE. At approximately 11:17 p.m., I observed the garage door open on the CLEVELAND RESIDENCE. Inside the garage, I observed a white Mercedes sedan partially covered by a car cover.

36. On January 18, 2018, I viewed video surveillance in the area of CLEVELAND RESIDENCE. At approximately 8:06 a.m., I observed Minyana BISHOP exit the front door carrying a child seat, which she placed in the Ford SUV, before reentering the front door to the residence. At 8:09 a.m., the garage door opened, showing a white Mercedes sedan, partially covered by a car cover, parked inside the garage. As noted above, prior to the December 23, 2017 shooting, the white, Mercedes OR/888HRV was parked outside the residence. However, we have not seen

the white, Mercedes OR/888HRV parked outside the residence following the December 23, 2017 shooting in downtown Portland.

**Surveillance of CLEVELAND**

37. I have obtained two search warrants to utilize geo-location for the cellular telephone utilized by Johnell CLEVELAND, hereinafter "CLEVELAND – 5807." I have also obtained two search warrants to place a tracking device on two different Hertz rental vehicles operated by CLEVELAND (Ford SUV CA/7ZLR131 and a white Nissan sedan, CA/7TCN813). Through the use of physical surveillance, a fixed pole camera pointed at the CLEVELAND RESIDENCE, geo-location for "CLEVELAND – 5807", and a tracking device on CLEVELAND's Hertz rental vehicles, I know CLEVELAND resides on a nightly basis at the CLEVELAND RESIDENCE.

38. I know that CLEVELAND departs his residence almost every day carrying a backpack or satchel. I know that CLEVELAND typically drives to an apartment located at 812 SE 136th Avenue, Unit H88, Vancouver, WA (hereinafter, "WHITE APARTMENT"). The power utility for that apartment is registered in the name of Tinisha White. I believe CLEVELAND's activity of solely utilizing a rental car as a primary vehicle and traveling on a daily basis to an apartment complex is consistent with my training and experience of an individual utilizing the apartment as a location to store drugs, money, and guns.

39. On January 16, 2018, at approximately 9:33 a.m., I conducted surveillance using a fixed video camera pointing towards CLEVELAND's residence. I observed CLEVELAND exit his front door wearing jeans and a red sweatshirt carrying a backpack. CLEVELAND entered into the Hertz rental car CA/7ZLR131 (hereinafter, "CA/7ZLR131") and departed from his residence. I monitored the geo-location information for "CLEVELAND – 5807", which showed that once

Page | 13 – Affidavit of Special
Agent Scott McGeachy

the phone left the CLEVELAND RESIDENCE, the phone travelled north on Interstate 205 into Vancouver, WA, to the WHITE APARTMENT where it stayed for a brief period of time prior to departing from the apartment complex.

40. On January 17, 2018, at approximately 10:36 a.m., using a fixed video camera pointing towards the CLEVELAND RESIDENCE, I observed CLEVELAND exit the front door of his residence wearing sweats and a blue sweatshirt and carrying a backpack. CLEVELAND entered CA/7ZLR131 and departed from his residence. The geo-location information for "CLEVELAND– 5807," showed the phone travelled north on Interstate 205 to the WHITE APARTMENT where it appeared to remain for a short period of time before departing the location.

41. On January 18, 2018, I observed geo-location information for "CLEVELAND - 5807", which showed the phone left the CLEVELAND RESIDENCE and the phone travelled north on Interstate 205. Officer Scott McCollister and I setup surveillance at the WHITE APARTMENT. At approximately 12:20 p.m., Officer McCollister, who was parking inside the apartment complex, observed CLEVELAND drive CA/7ZLR131 to the back of the apartment complex towards Building H. CLEVELAND exited CA/7ZLR131 and stopped at the base of the stairs next to CA/7ZLR131 and a female came from the area of Unit 87 or Unit 88 and met briefly with CLEVELAND. CLEVELAND got back into CA/7ZLR131 and started to depart the complex, but stopped and then backed up CA/7ZLR131 towards Building H. The female came back down the stairs and walked towards the vehicle, and Officer McCollister's vision was blocked. Approximately one minute later, I observed CLEVELAND depart from 812 SE 136th Avenue, Vancouver, WA driving CA/7ZLR131.

42. On January 19, 2018, at approximately 12:14 p.m., via a fixed video camera, I observed

CLEVELAND exit the front door of his residence wearing a Seahawks jersey and carrying a

backpack. CLEVELAND entered into CA/7ZLR131 and departed from his residence. At

approximately 1:09 p.m., geo-location information for "CLEVELAND – 5807" showed it at the

WHITE APARTMENT. At approximately 1:25 p.m., the geo-location information showed the

"CLEVELAND – 5807" had departed from the apartment complex.

43. On January 24, 2018 at approximately 3:50 p.m., I reviewed geo-location information for

CLEVELAND's cellular telephone and identified the cellular telephone was located at the

WHITE APARTMENT. At approximately 4:05 p.m., I reviewed the geo-location for the

CLEVELAND cellular telephone and identified that it was located at a U.S. Bank located at

11621 SE Mill Plain Blvd., Vancouver, Washington. At approximately 4:20 p.m., I arrived at

the U.S. Bank branch and observed CA/ZLR131 parked in the U.S. Bank parking lot. I

observed CLEVELAND exit U.S. Bank where I subsequently lost physical surveillance on

CA/ZLR131. At approximately 4:55 p.m., I reviewed geo-location information and identified

the CLEVELAND cellular telephone had returned to the WHITE APARTMENT. I

subsequently reviewed U.S. Bank records and identified that on January 24, 2018,

CLEVELAND made a $451.00 cash deposit into the Cash or Collateral Entertainment bank

account ending in 1377.

44. On January 25, 2018, members of the Portland Police Bureau Drugs and Vice Division and I

conducted surveillance of CLEVELAND. At approximately 10:15 a.m., CLEVELAND exited

his residence wearing a black leather jacket and black hoodie and carrying a dark-colored

satchel. Investigators followed CLEVELAND from his Happy Valley residence to multiple

locations in Vancouver, WA, before CLEVELAND arrived at the WHITE APARTMENT.

Officer Chris Devlin positioned himself in the parking lot of the WHITE APARTMENT, with visual sight on the door for Apartment #88. Officer Devlin observed CLEVELAND using a key to unlock and enter the door for Apartment #88, without knocking.

45. On February 3, 2018, I reviewed video recordings from a fixed pole camera that is pointed towards the residence of Johnell CLEVELAND in Happy Valley, OR. At approximately 9:35 p.m., CLEVELAND departed his residence with a black satchel and entered into a white Nissan rental vehicle CA/7TCN813. I monitored the geo-location information for "CLEVELAND–5807" and noted at approximately 10:30 p.m. the "CLEVELAND– 5807" arrived at the WHITE APARTMENT. "CLEVELAND– 5807" remained overnight at the WHITE APARTMENT until it departed the following morning at approximately 9:05 a.m. I monitored the geo-location information for "CLEVELAND– 5807" and noted that it traveled around Northeast Portland prior to arriving back at CLEVELAND's residence in Happy Valley, OR.

46. On February 4, 2018, at approximately 11:45 a.m., using the fixed pole camera I observed CLEVELAND return to his residence in Happy Valley, OR. CLEVELAND exited the Hertz rental car Nissan CA/7TCN813 with the black satchel. CLEVELAND opened the trunk of the Nissan and removed a large black suitcase and a plastic bag containing unknown contents. I believe based on my review of the pole camera and geo-location information for "CLEVELAND-5807" that CLEVELAND stayed the night at the WHITE APARTMENT.

47. On February 5, 2018, CLEVELAND departed Portland, OR, to Los Angeles, CA. Officer Scott McCollister reviewed a Facebook post for Mak Billion, which stated CLEVELAND was ~~departing for Los Angeles, CA, for a single release party, which I know to mean the release of a~~ new song.

48. On February 12, 2018, at approximately 3:25 p.m., CLEVELAND arrived back at the
CLEVELAND RESIDENCE as a passenger seat of Nissan CA/7TCN813 and removed luggage
from the trunk of the Nissan. This is consistent with returning back to Portland, OR, from out of
town travel, which was supported by geo-location information for "CLEVELAND-5807."
Minyana Bishop was driving CLEVELAND in the Nissan rental car CA/7TCN813.

49. On February 12, 2018, at approximately 6:45 p.m., less than four hours after returning home
from his trip, CLEVELAND exited the front door of the CLEVELAND RESIDENCE with a
black satchel and entered CA/7TCN813 and departed from the residence. Utilizing geo-location
information and the tracker that had been placed on CA/7TCN813, I learned that CLEVELAND
arrived at the WHITE APARTMENT at approximately 7:29 p.m. and subsequently departed at
approximately 8:56 p.m. CLEVELAND arrived back at his residence at approximately 10:01
p.m.

**Cash or Collateral Entertainment, LLC (U.S. Bank 1377)**

50. I reviewed the Oregon Secretary of State website and confirmed that Johnell CLEVELAND
formed Cash or Collateral Entertainment on February 19, 2016, and renewed the business with
the Oregon Secretary of State on February 23, 2017. CLEVELAND listed the principal
business activity as "entertainment business," with a business location of 6439 SW Onassis
Place, Beaverton, OR 97007. 6439 SW Onassis Place, Beaverton, OR, is a residential house
located at the end of a cul-de-sac off of Onassis Place in Beaverton, OR. CLEVELAND
appears to have no interest in this residential location.

51. I reviewed the records for U.S. Bank account ending in 1377 for Cash or Collateral
Entertainment, LLC. From January 1, 2016, through September 2017, the U.S. Bank account
held in the name of Cash and Collateral Entertainment, LLC ending in 1377 had approximately

$124,034 in cash deposits.  My review of U.S. Bank account for Cash or Collateral Entertainment, LLC found that approximately 94% of the deposits into the bank account originate from cash.

52. I reviewed CLEVELAND's 2015 Form 1040 U.S. Individual Income Tax Return filed on or about February 6, 2016.  CLEVELAND filed a Schedule C-EZ, which listed his business as an entertainer and reported gross receipts of $16,750.

53. Johnell CLEVELAND filed a 2016 Form 1040 U.S. Individual Income Tax Return. CLEVELAND reported $61,669 in gross receipts on his 2016 "Schedule C Profit or Loss from Business" for Cash or Collateral Ent., LLC.  I reviewed the expenses reported on the Schedule C and identified that CLEVELAND had limited business expenses of $2,003 for supplies and $10,018 in travel.  I know that individuals who are involved in illegal activity, such as trafficking narcotics, often file and report much of their deposited income to a bank to avoid the scrutiny of the IRS.

54. I have reviewed a YouTube video listed under the username Mak Billion titled, "Bitch That was me!" and noted Johnell CLEVELAND sings in the video while driving an orange Dodge Durango with black stripes down the top of the vehicle.  The YouTube video lists the producer of the video as "Cash or Collateral Ent."  Other songs featuring the artist Mak Billion on YouTube are "Crackhouse," "Bankroll," and "Chase a Bag!"  I reviewed a YouTube video in which CLEVELAND refers to himself as "Mak Billion aka Bankroll Johnny."

55. Although CLEVELAND has several rap videos posted on YouTube, I failed to find any source of deposits into the Cash or Collateral Entertainment, LLC bank account that indicates any legitimate entertainment business income.  There were no checks for producing a music album or credit card deposits or royalty checks indicating proceeds from the sale of music an individual

might receive from a music production company.  I found one check deposited to the Cash or

Collateral Entertainment U.S. Bank account ending in 1377 in the amount of $1,585.20, from

GEICO Insurance for an insurance claim, and a second check in the amount of $240.00, from

MJP Management, Inc. out of Portland, OR (a property management company).  After I failed to

find any sort of legitimate income in support of the cash deposits, I reviewed the expenses from

Cash or Collateral Entertainment account ending in 1377 in an attempt to identify any sort of

expenses related to a music production/entertainment company.  I recently found two cashier's

checks for $5,000 each, payable to Qworldstar, Inc., dated November 13, 2017, and November

30, 2017.  The cashier's checks listed the purpose as the "Crackhouse" video.  An internet

research identified Qworldstar, Inc., as a hip hop music video blog.  I also noted limited

expenses for music production as follows:  $1,200 expense to Alpha Broadcasting, $50.00

charge to ASCAP Membership (America's First and Leading Performing Rights Organization),

$632 charge to VYDIA, Inc., and $630 charge to Peerspace, Inc.

56. I attempted to identify a legitimate source of income in support of the $10,000 paid to

Qworldstar, Inc.  My review of the U.S. Bank account ending in 1377 for Cash or Collateral

Entertainment, LLC, identified that CLEVELAND made two substantial cash deposits to fund

the checks to Qworldstar.  On November 13, 2017, CLEVELAND deposited $5,520 in cash and

on November 30, 2017, CLEVELAND made a second large, round, even-dollar cash deposit of

$5,000 into Cash or Collateral Entertainment.  I found no deposits in support of a legitimate

earned income for the $10,000 in checks to Qworldstar, Inc.

57. A brief summary of the remaining expenses for Cash or Collateral Entertainment for the time

period of January 1, 2016 through September 2017 identified substantial charges to airline

travel, hotels, rental cars, and other miscellaneous home expenses as follows:  Walmart (two

purchases for $5,017.99 each), Albertson's Store totaling $1,362.99, Pittman Restaurant totaling $2,000.00, rental car expenses totaling $17,930.18, hotel charges totaling $13,028.09, and airline charges totaling $9,343.48.  The two charges to Walmart are consistent with the same approximate dates for the purchase of Moneygram Express Payments for $5,000 each from Walmart in order to pay off the **2012 Dodge Durango**, as will be outlined in greater detail below.

58. Based on my review of the cash deposits and expenses, I believe this bank account is being used to deposit proceeds from drug trafficking, which are being concealed and disguised through CLEVELAND's music production business/entertainment business as well as promote CLEVELAND's ongoing drug trafficking activity.  For these reasons, I am seeking to seize the entire contents of the account as property involved in money laundering and as proceeds of drug trafficking activity.

**The Dirty TaeToe, LLC (U.S. Bank 0475)**

59. I reviewed the Oregon Secretary of State website and confirmed Johnell CLEVELAND formed The Dirty TaeToe, LLC on July 6, 2016.  CLEVELAND is listed as the owner with a principal place of business at 6439 SW Onassis Place, Beaverton, OR 97007.  I know 6439 SW Onassis Place, Beaverton, OR is not currently associated with the food cart.  Surveillance identified The Dirty TaeToe is located at 4233 N. Mississippi Street, Portland, OR.  Based on Facebook messages, surveillance, and a review of bank records, I learned The Dirty TaeToe operates off and on throughout the year consistent with a typical food cart.

60. I reviewed the U.S. Bank Account for Johnell CLEVELAND dba Dirty TaeToe ending in 0475. For calendar year 2016, Johnell CLEVELAND dba Dirty TaeToe had cash deposits totaling $20,561 for the Dirty TaeToe LLC.  It should be noted that I did not account for cash deposits

less than $250.00 because U.S. Bank provided supporting documentation only for cash deposits

$250.00 and above.  I reviewed CLEVELAND's Schedule C Profit or Loss from Business filed

with the Internal Revenue Service, which CLEVELAND reported gross receipts from sales of

$28,140 from The Dirty TaeToe food cart, which is consistent with deposited cash and sales

from Square, Inc.

61.  I reviewed the U.S. Bank Account for Johnell CLEVELAND dba Dirty TaeToe ending in 0475

for January 1, 2017, through September 30, 2017, and identified total cash deposits of

approximately $34,263.  Furthermore, I noticed substantial deposits from Square, Inc., which is

a point of sale machine.  The cash deposits into the U.S. Bank account ending in 0475 are often

in small increments consistent with the operation of a food cart.

62.  During my review of U.S. Bank ending in 0475 for The Dirty TaeToe, I identified several large

cash deposits in even dollar amounts that are not consistent with the operation of a food cart.

Based on my training and experience, these cash deposits are consistent with laundering illegal

monies such as drug proceeds through a business to conceal and disguise the true source of the

funds.  The following cash deposits totaling $25,719 do not appear consistent with cash deposits

originating from the sale of food from a food cart, such as The Dirty TaeToe:

- 08-08-2016 - $2,000
- 10-06-2016 - $5,000
- 02-03-2017 - $1,190
- 02-17-2017 - $2,960
- 05-02-2017 - $2,000
- 10-27-2017 - $6,000
- 12-01-2017 - $2,869
- 12-20-2017 - $2,000
- 01-08-2018 - $1,700

63.  I subsequently reviewed the withdrawals from U.S. Bank account ending in 0475 in an attempt

to identify if the funds were being used to support the expenses for The Dirty TaeToe or if the

funds were used to support CLEVELAND's illegal activity. During my review of the expenses from The Dirty TaeToe bank account, I noted several transactions inconsistent with the operation of a food cart business, such as travel expenses, hotel reservations, and rental car expenses. I know that such transactions are consistent with an individual involved in promoting unlawful activity of trafficking narcotics.

64. The following is a summary of the travel expenses that were drawn off the U.S. Bank account for The Dirty TaeToe, LLC.

- 08-03-2016 – $216.59, Priceline Hotel
- 08-05-2016 – $6.78, Exxon Mobile Firebaugh, CA
- 08-28-2016 – $6.50, NNT King's Liquor, San Diego, CA
- 08-29-2016 – $146.38, Hilton, San Diego, CA
- 08-30-2016 – $114.69, Hotel Reservation
- 11-25-2016 - $335.15, Enterprise Rent a Car
- 12-02-2016 - $190.10, Enterprise Rent a Car
- 12-11-2016 - $250.00, Enterprise Rent a Car
- 12-15-2016 - $200.00, Enterprise Rent a Car
- 12-22-2016 - $213.17, Enterprise Rent a Car
- 12-26-2016 - $156.04, Enterprise Rent a Car
- 12-28-2016 - $150.00, Enterprise Rent a Car
- 01-13-2017 - $54.95, Enterprise Rent a Car
- 01-28-2017- $105.52, Priceline Hotels
- 01-02-2017 - $123.07, Enterprise Rent a Car
- 01-05-2017 - $160.57, Priceline Hotels
- 01-05-2017 – $87.95, Southwest Airlines
- 01-05-2017 – $87.95, Southwest Airlines
- 01-06-2017 – $164.19, Radisson Hotels, Whitter, CA
- 01-08-2017 - $234.06, Enterprise Rent a Car
- 01-17-2017 - $320.00 ($250.00-01-13-2017 and $70.00 – 01-15-2017), Enterprise Rent a Car
- 01-28-2017 - $105.52, Priceline Hotels
- 01-29-2017 - $134.00, Priceline Hotels
- 02-11-2017 - $107.91, Comfort Inn, Portland, OR
- 02-11-2017 - $107.91, Comfort Inn, Portland, OR
- 02-19-2017 - $139.57, DoubleTree, Whitter, CA
- 02-19-2017 - $168.49, Priceline Hotel
- 02-20-2017 - $144.32, Priceline Hotel
- 02-20-2017 - $315.20, Renaissance Hotel, Los Angeles, CA

- 02-20-2017 - $36.00, Caesars Hotel, Las Vegas, NV
- 02-21-2017 - $113,11, Priceline Hotel
- 02-21-2017 - $363.56, Enterprise Rent a Car, Los Angeles, CA
- 02-20-2017 - $401.20, Alaska Airlines
- 03-03-2017 - $79.94, Southwest Airlines
- 03-03-2017 - $87.94, Southwest Airlines
- 03-04-2017 - $153.49, Priceline Hotels
- 03-06-2017 - $175.21, Doubletree Hotel, Whitter, CA
- 03-06-2017 - $215.04, Doubletree Hotel, Whitter, CA
- 03-13-2017 - $175.90, Southwest Airlines
- 03-13-2017 - $175.90, Southwest Airlines
- 03-27-2017 - $137.21, Residence Inn, Portland, OR
- 03-27-2017 - $147.71, Residence Inn, Portland, OR
- 03-27-2017 - $671.87, Southwest Airlines
- 04-31-2017 - $451.91, Enterprise Rent a Car
- 04-05-2017 - $388.75, Enterprise Rent a Car, Las Vegas, NV
- 04-07-2017 - $211.80, United Airlines
- 04-29-2017 - $215.13, Priceline Hotel
- 04-30-2017 - $184.46, Priceline Hotel
- 04-30-2017 - $15.05, The LA Hotel Downtown
- 04-30-2017 – $308.98, Southwest Airlines
- 05-06-2017 - $464.93, Enterprise Rent a Car, Portland, OR
- 05-06-2017 - $689.63, Enterprise Rent a Car, Los Angeles, CA
- 05-28-2017 - $250.00, Enterprise Rent a Car, Portland, OR
- 05-30-2017 - $182.50, Priceline Hotel
- 06-03-2017 - $150.00, Cheapoair.com
- 06-01-2017 - $290.80, Delta Air, NY
- 06-03-2017 - $290.80, Cheapoair.com
- 06-05-2017 - $92.31, Priceline.com Hotel
- 06-04-2017 - $300.98, Southwest Airlines
- 06-04-2017 - $300.98, Southwest Airlines
- 06-05-2017 - $34.01, Lux Front Desk, Las Vegas, NV
- 07-10-2017 - $252.98, Priceline.com Hotel
- 07-13-2017 - $609.46, Southwest Airlines
- 07-26-2017 - $404.00, Enterprise Rent a Car, Portland, OR

65. As noted above, on October 27, 2017, CLEVELAND deposited $6,000 in cash into The Dirty

TaeToe, LLC account ending in 0475. I know that also on October 27, 2017, using funds from

The Dirty TaeToe, LLC account ending in 0475, CLEVELAND purchased a $6,000 cashier's

check payable to Mercedes Benz for the down payment on the lease of a 2018 Mercedes Benz SUV.

66. I reviewed a summary of Southwest Airline records for all plane tickets purchased by Johnell CLEVELAND. I noted multiple female companions (Chelsea Edwards, Acacia Dietz, Tinisha White, Tierra Edwards, and Tanysha Ross) traveled with CLEVELAND. I know that CLEVELAND provided Deitz with bulk cash to place in her backpack when she travelled with CLEVELAND. I know that it is common for individuals who are travelling with large amounts of currency to break up the money into smaller increments to avoid scrutiny of TSA or seizure of the entire funds. Furthermore, I know it is common for individuals involved in drug trafficking to utilize female passengers to carry cash to avoid scrutiny by law enforcement.

| Date | Depart | Arrive | Passenger |
|------|--------|--------|-----------|
| 05/12/2016 | PDX | LAX | Johnell Cleveland |
| 05/12/2016 | PDX | LAX | Chelsea Edwards |
| 07/25/2016 | PDX | LAX | Johnell Cleveland |
| 07/25/2016 | PDX | LAX | Kyrell Bishop |
| 07/25/2016 | PDX | LAX | Acacia Dietz |
| 07/25/2016 | LAX | LAS | Johnell Cleveland |
| 08/03/2016 | PDX | LAX | Johnell Cleveland |
| 08/03/2016 | PDX | LAX | Kyrell Bishop |
| 08/03/2016 | PDX | LAX | Acacia Dietz |
| 12/07/2016 | PDX | LAX | Johnell Cleveland |
| 12/07/2016 | PDX | LAX | Tinisha White |
| 12/08/2016 | LAX via LAS | PDX | Johnell Cleveland |
| 12/08/2016 | LAX via LAS | PDX | Tinisha White |
| 01/05/2017 | LAX via SJC | PDX | Johnell Cleveland |
| 01/05/2017 | LAX via SJC | PDX | Kyrell Bishop |
| 01/05/2017 | LAX via SJC | PDX | Johnell Cleveland |
| 01/05/2017 | LAX via SJC | PDX | Kyrell Bishop |
| 01/06/2017 | PDX via SMF | LAX | Tiarra Edwards |
| 01/06/2017 | PDX via SMF | LAX | Johnell Cleveland |
| 01/08/2017 | LAX | PDX | Johnell Cleveland |
| 01/08/2017 | LAX | PDX | Tiarra Edwards |

| 03/16/2017 | PDX via OAK | LAX | Johnell Cleveland |
|---|---|---|---|
| 03/16/2017 | PDX via OAK | LAX | Tanysha Ross |
| 03/18/2017 | LAX via SJC | PDX | Johnell Cleveland |
| 03/18/2017 | LAX via SJC | PDX | Tanysha Ross |
| 06/05/2017 | LAS | PDX | Johnell Cleveland |
| 06/05/2017 | LAS | PDX | Tinisha White |

67. Therefore, I believe the U.S. Bank account ending in 0475 for Johnell CLEVELAND dba Dirty TaeToe is being used to launder illicit proceeds by concealing and disguising the true source of funds. Moreover, I believe the bank account is also being used to promote the underlying unlawful activity of drug trafficking through the purchase of rental cars, hotel rooms, and airline flights.

68. Therefore, I request seizure of up to $14,569 as property involved in money laundering and proceeds of drug trafficking. As the money is not directly traceable, I am seeking to rely on 18 U.S.C. § 984 to seize the total of the cash deposits made in the preceding year starting on May 2, 2017, to the present, which total $14,569.

**U.S. Bank Account for Minyana Bishop (U.S. Bank 8619)**

69. I reviewed the Oregon Secretary of State website and confirmed Minyana Bishop formed Precious's Learning Center, LLC on July 11, 2017. Johnell CLEVELAND and Minyana Bishop are both listed as members of Precious's Learning Center with an address of 7505 NE Skidmore Street, Portland, OR 97218.

70. A review of the U.S. Bank account for Minyana Bishop ending in 8619 identified that from November 13, 2015, through October 10, 2017, Minyana Bishop had cash deposits totaling approximately $92,000. For the 2016 calendar year alone, Minyana Bishop had cash deposits of approximately $47,000.

71. I reviewed Minyana Bishop's 2016 Form 1040 U.S. Individual Income Tax Return and noted Minyana Bishop reported gross receipts of $14,770 as an independent dancer and received a tax refund totaling $5,042. Furthermore, I have been unable to identify any deposits in support of a childcare center for Precious's Learning Center. I reviewed Minyana Bishop's 2016 Form 1040 and noted that there was not a W-2 that would tie back to identifiable place of employment. Moreover, I believe Minyana Bishop to be a recent mother and doesn't appear that she has current employment with a specific business.

72. I reviewed the expenses for Minyana Bishop's U.S. Bank account ending in 8619 and noted that the cash deposits are used to pay personal living expenses to include Exeter Financial Services, Comcast, Sprint Wireless, and Cricket Wireless.

73. I reviewed records from Exeter Financial Services and noted Minyana Bishop purchased a 2011 Mercedes E350 on June 17, 2015 for $26,995.00. On Exeter Financial Services forms, Minyana listed her employer as American Red Cross with gross monthly earnings of $9,600.00. I have been unable to identify any deposits from American Red Cross in support of Minyana's claimed monthly American Red Cross salary of $9,600.00. The 2011 Mercedes E350 is the vehicle believed to currently be parked at inside the garage and involved in the December 23, 2017 shooting.

74. Based on my review of Minyana Bishop's U.S. Bank account, I believe that Minyana's cash deposits in 2016 totaling $47,000 (and cash deposits totaling $92,884 through October 2017) are not consistent with her reported income on her federal income tax return of $14,770, but are consistent with proceeds of drug trafficking. I have been unable to identify a source of legitimate funds for the cash deposits into Minyana Bishops U.S. Bank account. Moreover, I believe based on my training and experience as well as the facts contained in this affidavit, that

Minyana Bishop's U.S. Bank account 8619 contain proceeds of drug trafficking.  For these reasons, I am seeking to seize up to $31,020 from Bishop's bank account as proceeds of drug trafficking.  As the money is not directly traceable, I am seeking to rely on 18 U.S.C. § 984 to seize the total of the cash deposits made in the preceding year starting on March 6, 2017, to the present deposited into bank account, which total $31,020.

**U.S. Bank Account for Johnell Cleveland (U.S. Bank 9166)**

75. I reviewed the U.S. Bank account ending in 9166 held in the name of Johnell CLEVELAND in an attempt to identify a source of legitimate money deposited into the bank account.  My review identified an initial cash deposit of $3,776.00 on February 23, 2017 and subsequent small cash deposits less than $500.00.  Total cash deposits from February 23, 2017 through December 31, 2017, were approximately $5,796.21.  Based on the bank records, the balance of the bank account does not drop below this amount.

76. I identified a $20,000 check issued to a Pamela White, 8540 N. Swift Way, #71, Portland, OR, deposited into the Johnell CLEVELAND U.S. Bank account ending in 9166.  The check was issued from Gallagher Bassett Services for New Hampshire Insurance Company.  I believe Pamela White is CLEVELAND's mother, based on my review of CLEVELAND's U.S. Bank safety deposit box application that asked CLEVELAND for his "Mother's Maiden Name." CLEVELAND notated on his safety deposit application that his mother's maiden name as "White."  I do not have any reason to believe this deposit was associated with drug trafficking.

77. I have been unable to identify a source of legitimate funds in support of the $5,796 in cash deposits.  Therefore, I believe, based on my training and experience as well as the facts outlined earlier in the affidavit, that funds up to $5,796 in the U.S. Bank account ending in 9166 are forfeitable as directly traceable proceeds of drug trafficking.

**2012 Dodge Durango, its tools and appurtenances, OR/904HGL, VIN: 1C4SDHCT7CC362041**

78. Oregon Department of Motor Vehicles lists the registered owner of the 2012 Dodge Durango
OR/904HGL, VIN: 1C4SDHCT7CC362041, as Johnell CLEVELAND with a listed address of
6439 SW Onassis Place, Beaverton, OR.

79. On January 24, 2015, CLEVELAND purchased the **2012 Dodge Durango** for $31,715.03.
CLEVELAND put $2,900 as a down payment and financed the remaining $28,815.03.
CLEVELAND financed the **2012 Dodge Durango** through Santender Consumer.

80. Starting on November 30, 2016, and continuing through December 27, 2016, CLEVELAND
structured six payments in cash from different Walmart locations in and around the
Portland/Vancouver metro area to purchase Moneygram express payments totaling $26,345
payable to Santander Consumer Account Number 8597228 to pay off his vehicle loan for his
**2012 Dodge Durango**. As outlined above, CLEVELAND made a cash deposit of $5,105 on
November 30, 2016, into U.S. Bank account for Cash or Collateral and on November 30, 2016,
CLEVELAND purchased a Walmart Moneygram express payment for $5,017.99. I know on
December 5, 2016, CLEVELAND made a $5,000 cash deposit into the U.S. Bank account for
Cash or Collateral Entertainment and had a corresponding charge of $5,017.99 from Walmart
also on December 5, 2016. The following is a summary of the Moneygram express payments to
purchase the **2012 Dodge Durango**:

- November 30, 2016 - $5,000 Moneygram
- December 3, 2016 - $5,000 Moneygram
- December 5, 2016 - $5,000 Moneygram
- December 9, 2016 - $5,000 Moneygram
- December 26, 2016 - $5,000 Moneygram
- December 27, 2016 - $1,345 Moneygram

81. I know from my training and experience that it is unusual for an individual to suddenly purchase
multiple Moneygram express payments utilizing cash in large, even dollar amounts. Cash

Page | 28 – Affidavit of Special
Agent Scott McGeachy

deposits in large, even dollar purchases/payments spread out over several days and made from

different locations is often indicative of an individual attempting to conceal their ownership

interest in illegally obtained money.

82. Moreover, I know the **2012 Dodge Durango** parked in the driveway of the CLEVELAND

residence to be orange with black stripe down the top of the vehicle.  I know this vehicle to be

identical to the Dodge Durango in CLEVELAND's YouTube video, "Bitch That was me!"  I

know the loan on the **2012 Dodge Durango** is fully discharged after the lender received the

multiple cash deposits in a short period of time in 2016.  Therefore, I believe the cash payments

totaling $26,345 that were utilized to pay off the loan on the **2012 Dodge Durango** are proceeds

of drug trafficking and therefore the **2012 Dodge Durango** is forfeitable as directly traceable

proceeds of drug trafficking.

### CONCLUSION

83. I know that CLEVELAND has generated a substantial amount of cash starting in 2016 and

continuing through 2017.  Based on CLEVELAND's activities of utilizing rental cars and travel

patterns consistent with trafficking drugs, I believe that the cash he has generated represents

proceeds of CLEVELAND's drug trafficking.

84. I know CLEVELAND operates Cash or Collateral Entertainment, LLC, an entertainment

business.  I know CLEVELAND promotes his music rap videos on YouTube and other media

outlets.  However, I have been unable to identify any source of legitimate income derived from

music videos or CDs/downloadable music such as checks from a media company, record sales,

or royalty payments.  I know the source of almost all the funds deposited into Cash or Collateral

Entertainment, LLC originate from cash.  I know the majority of expenses from the Cash or

Collateral Entertainment, LLC bank account are for rental cars, hotel reservations, and plane

tickets, which I know to be consistent with trafficking narcotics.  I believe that U.S. Bank

account held in the name of Cash or Collateral Entertainment is used to conceal and disguise

CLEVELAND's drug proceeds as well as promote CLEVELAND's ongoing drug trafficking

activities by purchasing airline tickets, rental cars and hotels.

85. CLEVELAND operates The Dirty TaeToe, LLC food cart located in North Portland.  I know

that the food cart is a legitimate business that operates off and on throughout the year consistent

with a food cart business.  However, I have identified several large cash deposits in round,

whole dollar amounts that were made into The Dirty TaeToe, LLC bank account that are

inconsistent with food cart sales.  I believe these large cash deposits are indicative of laundering

illegal money through the bank account of a legitimate food cart business in order to conceal

and disguise the true source of the funds as well as promote the ongoing illegal activity through

the purchase of rental cars, airline tickets and hotel reservations.

86. I further believe that based on CLEVELAND's activities and lack of any legitimate income,

proceeds of drug trafficking as cash is deposited into Minyana Bishop's U.S. Bank account 8619

and Johnell CLEVELAND's U.S. Bank account 9166 and was also utilized to pay off the loan

on the **2012 Dodge Durango**.

87. Based on the information contained in this affidavit, I submit the property contained in the

**SUBJECT BANK ACCOUNTS** and the **2012 Dodge Durango** are subject to seizure pursuant

to 18 U.S.C. § 981(b) and 21 U.S.C. §§ 853(f) and 881(b), and subject to forfeiture pursuant to

18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a)(1), 984, and 21 U.S.C. §§ 853(a)(1) and (2) and

881(a)(6).

88. Furthermore, I submit that an order under 21 U.S.C. § 853(e) may not be sufficient to assure the

availability of the property for forfeiture because the bank accounts are used as tools of money

Page | 30 – Affidavit of Special
Agent Scott McGeachy

laundering, which include the rapid movement of funds and easily transferred and concealed, and because the vehicle is easily moved and concealed.

89. This affidavit has been reviewed by Assistant United States Attorney Julia E. Jarrett, who has advised me that, in her opinion, there is probable cause to seize the assets identified above.

### REQUEST TO SEAL

To avoid any premature disclosure of the existence of the above-described investigation to anyone who may generally view the public files of the clerk's office, with the result and risk that the investigation may be compromised, I request that the affidavit and order authorizing the searches, be sealed until further order of this Court.

_____
SCOTT MCGEACHY
Special Agent
Internal Revenue Service

SUBSCRIBED and SWORN to before me this 6th day of March 2018.

_____
PAUL PAPAK
United States Magistrate Judge

Page | 31 – Affidavit of Special
Agent Scott McGeachy